145 So. 669

## LEE v. CITY OF FAIRFIELD (MINOR, Garnishee).

### 6 Div. 188.

Supreme Court of Alabama.

Jan. 26, 1933.

W. A. Jacobs, of Birmingham, for appellant.

G. P. Benton, of Fairfield, for appellee.

THOMAS, J.

This appeal is from a judgment denying plaintiff's motion for a judgment against the garnishee, and in discharging the latter.

[1] 225 Ala. 8.

The suit for personal injuries sustained upon a public street of the municipality of Fairfield resulted in judgment for plaintiff. A writ of garnishment in aid of the judgment issued to W. M. Minor, William Minor, and A. O. Chesser; and in answer to said garnishment, "A. O. Chesser, who being duly sworn," etc., and who "is authorized to make this answer * * * says * * * said garnishee was not indebted," and prays that the garnishment be dismissed with his reasonable costs for making the answer.

The city claimed, as exempt to it from garnishment, levy, and sale under execution or other processes, "money, rent, or indebtedness due by W. M. Minor, and, or, William Minor to the City of Fairfield," as rent due on defendant's "public property" used by it "in its corporate capacity for the purpose of raising revenue"; claimed that the revenue raised was used exclusively for municipal purposes, and that "it was necessary to pay the ordinary municipal expenses of government" of that municipality. There was no contest of the claim of exemptions. Code, § 7889.

There was answer of the garnishee, Minor, to like effect of the claim of exemptions, and demand for oral answer; and there was a motion to dismiss the garnishment, after answers of said garnishees, on the foregoing grounds.

The bill of exceptions presents the evidence on these several claims, answers, and motion. It was to the effect that W. M. Minor was not connected with the city, except that he leased its land called Park Area, located at the intersection of Commerce avenue and Valley road, "as a barbecue stand and not otherwise," under a written contract which may "not be assigned or transferred," nor may the "premises be subleased or underlet without the consent" of the city, and that the tenancy may be terminated by the landlord "without notice or demand," etc.; that the agreed rental was $50 per month; that witness paid "a license to the City of Fairfield for the privilege of conducting that business there. The place is located at 5300 Valley Road, or 5300 Gary Avenue. Valley Road runs into Gary Avenue, and I guess it would be called Garry Avenue there, and it would be the building at 5300 Gary Avenue. That is the street number of the place. That property there has been used for a barbecue business similar to the one I am now operating for about five years. Mr. A. O. [Chester] Chesser had it before I rented it from the city, and paid the city rent for conducting the same kind of business. The garnishment in this case was served on me along in December. My rent is due the 15th of every month. I now owe the City of Fairfield under the lease, $175.00 in rent. That is, I owe them under the lease from the 15th of January, 1932. I haven't paid them any of the rent since this garnishment was served on me." And on this evidence the plaintiff-appellant rested.

The defendant then called the witness Smith, who testified that he was vice president and general manager of the Fairfield Land Company; was familiar with the subdivision and plat of the city, and with the triangular property in question, and had been since November, 1916, and that it was "used for park purposes until the city was incorporated, which was about eleven years ago. This piece of property referred to is in the corporate limits of the City of Fairfield. It was used for park purposes for at least a year after the city was incorporated."

The witness Culpepper, called by the city, testified: "I am City Clerk and City Treasurer of the City of Fairfield, Alabama, and have been since October, 1924. I am familiar with this triangular piece of property in question, where the barbecue stand is located. The city put a lease on it about four or five years ago. I knew it was there before that time, but I never thought much about it. When I first came to know it, it was used for a parking place there. A building stood there to get the street cars. The street car backs in there. It is a park and recreation place. The City of Fairfield has not purchased that particular piece of property since I have been with the city. I can't find any record of where they purchased it. My best judgment is it has been used for a barbecue stand about three years. When it was first leased, it wasn't leased for a barbecue stand. To begin with, it had an orange mill on it, and then it stayed closed awhile. During all of that time the city has collected revenue from the time it was put on there. That revenue was put into the general funds to pay operating expenses, policemen and firemen, and any other necessary governmental function, maintain streets. All of this revenue derived from this piece of property has been used for governmental purposes. That is, all that we have collected. In my judgment, the City of Fairfield needs this revenue to operate the governmental functions. This fund, at the present time, is part of the revenue of the City of Fairfield."

On cross-examination, the witness testified as follows: " * * * The City of Fairfield formerly made a lease with the Fairfield Orange Mill, or Orange Company, or something like that, giving that company a lease on this piece of property. That company had an orange crush drink stand there, and Mr. Odom was a member of that firm, and Mr. Odom executed that lease on behalf of the Fairfield Orange Crush Company, or whatever the name was, and the City of Fairfield gave that company that Mr. Odom was

connected with, a lease on that property. My best judgment is that was somewhere around five years ago. Continuously since that time, the city has, by various leases, had that property rented out and has collected the rent on it every month up to the 15th of January of this year from the several different tenants that we have had it rented to. During all of that time, someone has been operating a business there on that property for his own private use and profit and the city had nothing to do with the operating of that business, except as the landlord under the lease. I guess the only connection the city had with that business was the relation of landlord and tenant. I just know they had it rented. That is all I know about the business part of it. All of those tenants paid licenses to the city to operate the business. This money that the city collected on these leases was deposited in the bank to the account of the general fund of the City of Fairfield."

The witness Esslinger testified that he was "familiar with the triangular tract of land in question. I have known it ever since 1912. It was used as a park area at the time, with flowers and shrubs planted on it. It was so used up until the orange mill was placed there in 1925, or 1926."

Thereupon the city of Fairfield offered in evidence a map showing the location of the triangular piece of property under discussion, said piece of property being the triangular plat bounded by Commerce avenue, Fifty-Third street, and Gary avenue on said map.

The foregoing will indicate the use and character of the property, and the rents derived therefrom.

We have carefully considered this evidence, inspected the map of the city, which is made a part of the record, and are of the opinion, and so hold, that there was no error of the trial court in denying judgment against garnishee, Minor, and discharging the garnishee at the cost of plaintiff.

The municipal funds due the city by the garnishee were due and were to be realized for municipal purposes, and were not subject to garnishment. Section 7889, Code; Russell & Johnson v. Town of Oneonta, 199 Ala. 64, 73 So. 986, and authorities; Murphree v. City of Mobile, 108 Ala. 663; Murphree v. City of Mobile, 104 Ala. 663, 18 So. 740; Mayor and Aldermen of Birmingham v. Rumsey & Co., 63 Ala. 352; Equitable Loan & Security Co. v. Town of Edwardsville, 143 Ala. 182, 38 So. 1016, 111 Am. St. Rep. 34; Scruggs & Echols v. City of Decatur, 155 Ala. 616, 46 So. 989; Southern Railway Co. v. Hartshorn, 150 Ala. 217, 43 So. 583, 124 Am. St. Rep. 68; Ellis v. Pratt City, 111 Ala. 629, 20 So. 649, 33 L. R. A. 264, 56 Am. St. Rep. 76; 26 A. L. R. 327, note; 63 A. L. R. pages 1305, 1306, note; John Klein v. City of New Orleans, 99 U. S. 149, 25 L. Ed. 430; 23 C. J. 355 n.

The judgment of the circuit court is without error, and is affirmed.

Affirmed.

GARDNER, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

ANDERSON, C. J. (dissenting).

I cannot agree that the rent or fund in question is exempt and not subject to garnishment. The fund in question was ground rent, and the property so rented was not so "used" for municipal purposes as to bring the rent within the exemption. The word "used," especially when applied to real estate, means the direct and immediate use of the property, and not to rentals of municipal property. Grand Lodge of Masons v. City of Burlington, 84 Vt. 202, 78 A. 973; City of Cincinnati v. Lewis, Auditor, 66 Ohio St. 49, 63 N. E. 588. See, also, note, 19 L. R. A. p. 293.

BROWN, J., concurs in the foregoing dissent.